FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

02 SEP 17 AM 10:50

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOHN E. SHAVERS, et al., ) | |
| ) | |
| Plaintiffs and Counter- ) | |
| claim Defendants, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | 01-AR-0533-J |
| ) | |
| JOHN ROBERTS MACHINERY ) | |
| COMPANY, INC., ) | |
| ) | |
| Defendant and Counter- ) | |
| Claimant. ) | |

ENTERED
SEP 17 2002

**MEMORANDUM OPINION**

Before the court are (1) a motion for summary judgment filed by defendant, John Roberts Machinery Company, Inc. ("John Roberts"), (2) a motion to suppress the deposition of John E. Shavers ("Shavers") filed by plaintiffs, Shavers, JESCO Construction Corporation, a Louisiana corporation ("JESCO Louisiana"), and JESCO Construction Corporation of Mississippi, a Mississippi corporation ("JESCO Mississippi)(collectively "plaintiffs"), and (3) a motion for summary judgment filed by counterclaimant, John Roberts, against JESCO Louisiana, JESCO Mississippi and Shavers.[1] The court has previously dismissed the

---

[1] John Roberts assumes in its brief that its complaint is against both JESCO entities. However, John Roberts only named JESCO Louisiana and Shavers in its counterclaim filed in this court. The counterclaim was never amended to add JESCO Mississippi but because the original replevin action in Mississippi was against JESCO Mississippi, and because this court

1

/10

collateral action of Shavers, JESCO Louisiana, and JESCO Mississippi against Western Heritage Insurance Company.

### Statement of Undisputed Material Facts

Shavers is president and sole shareholder of JESCO Louisiana[2], and fifty (50) percent owner of JESCO Mississippi. On or about October 28, 2000, Shavers and JESCO Louisiana signed a promissory note payable to the order of John Roberts for the balance due on the purchase price of two Caterpillar D9 bulldozers. A copy of that note is attached as an appendix. The price of the two bulldozers was $260,000.00 to be paid in three equal installments of $86,666.67. JESCO Louisiana or its

---

has already granted John Roberts' motion for repossession of the replevied equipment the court has treated all three plaintiffs as counterclaim defendants.

[2] There has been a lot of confusion over the two JESCO Construction Corporation entities involved in this case. JESCO Construction Corporation is a Louisiana corporation. JESCO Construction Corporation of Mississippi is a Mississippi corporation. To further add to the confusion, the registered office of JESCO Mississippi is in Mississippi, but the corporation operates out of Louisiana. JESCO Louisiana has a physical address in Mississippi which is the same address as the registered office of JESCO Mississippi. Lastly, the checks for JESCO Louisiana and JESCO Mississippi both contain the designation of "JESCO Construction Corporation," not delineating which is the Louisiana corporation and which is the Mississippi corporation. The only difference on the checks is the address and phone number. By reviewing the checks and articles of incorporation one would assume that it is dealing with the Mississippi corporation when in fact it is dealing with the Louisiana corporation. It appears that Shavers from time to time treats them as a single entity. The same is true for John Roberts, which probably did not know that there were two corporations named JESCO until this litigation got started.

representative was given a *pro forma* invoice with the promissory note. That invoice provided that the dozers were "Sold AS IS WHERE IS, No Warranty Expressed or Implied." Shavers says that despite this disclaimer John Roberts represented that the dozers would last a year in operation. However, Shavers himself testified that in his opinion "John Roberts thought the machines were in better condition than they were. I think he, whoever he bought them from, socked it to him."

At the time of the sale, First National Bank of Jasper ("FNB"), John Roberts' financing institution, held a security interest in the dozers. When John Roberts purchases a piece of equipment for resale using FNB's line of credit, FNB routinely obtains a security interest in the equipment. FNB supplied the financing for both dozers and acquired its usual security interest in them by filing a UCC-1 statement on each dozer with the Alabama Secretary of State. The sale took place in Alabama. Prior to the sale to Shavers and one of his corporations, John Roberts notified FNB of the terms and conditions of the sale, and FNB agreed to terminate the UCC-1s. For some unexplained reason FNB failed to terminate the UCC-1s before the dozers were delivered to the buyer. However, FNB did terminate the UCC-1s on August 30, 2001 after learning of this litigation.

At the time of the sale, JESCO Louisiana issued its check to John Roberts in the amount of $83,000.00, rather than the

contracted amount of $86,666.67. John Roberts was told that JESCO Louisiana would issue a new check for the full amount of $86,666.67, or it would issue another check for the difference. On or about November 16, 2000, Shavers executed a security agreement to John Roberts on behalf of JESCO Louisiana. Some time after this security agreement was executed, the check issued for $83,000.00 was returned for insufficient funds. On January 18, 2002, JESCO Louisiana issued a good check in the amount of $83,000.00 to replace the bounced check. Neither JESCO Louisiana nor Shavers has paid any of the remaining monies due by the terms of the note and security agreement.

On November 24, 2000, while Shavers and one or more of the JESCO companies were operating the dozers on a job, one dozer was damaged when it sank and was covered by water. Further damage was caused when a storm again covered the dozer with water.

After several months of failing to pay in accordance with the terms of the promissory note, John Roberts took legal action to collect the money owed to it. On or about February 1, 2001, it began this litigation by filing a replevin action in the Circuit Court of Harrison County, Mississippi styled: *John Roberts Machinery Company v. JESCO Construction Corporation of Mississippi*, Case No.: A2401-2001-0039. That case was removed by JESCO Mississippi to the United States District Court for the Southern District of Mississippi on February 15, 2001 and

renumbered civil action:1:01CV60. It was thereafter transferred to this court and merged or metamorphosed into the separate action filed by John Roberts filed in this court and converted into a counterclaim. The complaint that was first filed in this court was filed by Shavers, JESCO Mississippi and JESCO Louisiana. It arguably was filed in reaction to the replevin action that had been filed by John Roberts in Mississippi. In this court John Roberts claims breach of the promissory note, fraud, and detinue.

Shavers' deposition was taken on several occasions and was completed on June 18, 2002. The court reporter stated in her affidavit that in the course of transcribing her notes she inadvertently pressed the button which recalled the phrase "Alabama Rules of Civil Procedure" instead of "Federal Rules of Civil Procedure." The deposition consists of three volumes in excess of 400 pages. The first volume was mailed by the court reporter on or about May 10, 2002 and was received shortly thereafter. Shavers received the complete copies of his segmented deposition on July 12, 2002, after the original due date for dispositive motions, which was July 1, 2002. John Roberts filed only those portions of the deposition it needed to support its motion for summary judgment.

### Motion to Suppress

Along with the brief opposing John Roberts' motion for

summary judgment, Shavers and his companies filed a motion to suppress Shavers' own deposition. It will be denied. Plaintiffs do not contend that the deposition testimony contains errors or is untrustworthy. Rather, plaintiffs argue that the Shavers' deposition should be suppressed because of technical errors in the notice of deposition, mailing, and certification.

Rule 32(d)(1), Fed.R.Civ.P., provides that all errors and irregularities in a notice for taking a deposition are waived unless written objection is promptly served upon the party giving notice. At the time that Shavers' deposition was taken plaintiffs failed to provide written objections and failed to object to the errors and irregularities contained in the initial deposition notice, which through error had stated that the deposition was being taken pursuant to Rule 30, Ala.R.Civ.P. Plaintiffs waived any possible objections.

Plaintiffs argue that a deposition must be signed and/or endorsed and dated by the officer authorized to administer the oaths, with evidence of commission. There is no such signing requirement in Rule 30(f)(1), Fed.R.Civ.P. The Shavers deposition was properly certified.[3] This objection is without merit.

---

[3] Rule 32(d)(4), Fed.R.Civ.P., requires that a motion concerning any errors or irregularities in certification, sealing, and endorsing the deposition be filed with reasonable promptness. Shavers waited until August 15, 2002 to serve his motion to suppress. This was three months after he received the first volume of his deposition which would contain the alleged errors that Shavers complain. Therefore, motion to suppress was

6

**Motion for Summary Judgment of John Roberts as Defendant**

Plaintiffs claim that when John Roberts sued JESCO Mississippi in Mississippi it committed an abuse of process. To establish abuse of process, whether in Mississippi or Alabama, a plaintiff must prove "(1)the existence of an ulterior purpose; (2)a wrongful use of process, and (3)malice." *Willis v. Parker*, 814 So.2d 857, 865 (Ala. 2001). The element of ulterior purpose "must culminate in an actual abuse of process by perverting it to a use to obtain a result which the process was not intended by law to effect . . . ." *Id*.

John Roberts correctly points out that the result intended by its replevin action was to gain possession of the bulldozers. This is precisely the result intended by the law to be effected. John Roberts did not act with malice simply by bringing the replevin action against JESCO Mississippi when it probably should have been brought against JESCO Louisiana. The confusion regarding the JESCO entities was created by Shavers himself and his entities. Whether Shavers was playing a shell game is a question that need not here be answered. Shavers' reliance on the choice of law provision contained in the security agreement is misplaced. The filing of the replevin action in Mississippi was not an oppressive or wrongful use of process. This court is still

---

not filed with reasonable promptness as the rule requires.

not sure which of the JESCO companies actually had possession and was using each bulldozer when the default occurred. John Roberts simply used the Mississippi court for what that court was there for. By affidavit, Shavers pontificates on the seizures being wrongful. If the seizures were wrongful, this court is as guilty of misconduct as John Roberts is. The fact that this court expressly gave John Roberts' possession of the dozers and authorized the U.S. Marshals to assist in effectuating a writ of seizure constitutes an absolute disposition of plaintiffs' abuse of process claim.

Shavers says that when John Roberts filed its Mississippi replevin action it violated the Fair Debt Collection Practice Act ("FDCPA") and Ala.Code § 40-12-80 (1975). Section 40-12-80 of the Code of Alabama does not apply to debt collection practice. That statutory provision deals with the licensing and taxation of collection agencies, not with collection practices. John Roberts was not a "collection agency." John Roberts is not even considered to be a "debt collector" within the meaning of 15 U.S.C. 1692a(6), nor is the obligation created by a promissory note a consumer debt under the FDCPA. The FDCPA limits the term "debt" to consumer debts and does not apply to commercial debts. See *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1472, n.2 (11th Cir. 1998). The debt incurred by Shavers and JESCO Louisiana was not a consumer

8

debt. The bulldozers were purchased by JESCO Louisiana for a construction job that it or its sister corporation, JESCO Mississippi, had undertaken.

Shavers attempts to provide window dressing to his claim that John Roberts' violated the Fair Debt Collecting Practices Act by claiming that the alleged FDCPA violation resulted in intentional infliction of emotional distress, invasion of privacy, abuse of process, defamation and libel. Because the court has already found that John Roberts is entitled to judgment as a matter of law on the claim that it violated the FDCPA, it follows that it is entitled to judgment as a matter of law on all claims that might have arisen out of such violation. But, assuming for the sake of argument there was a violation of the FDCPA, such a violation could not create a separate tort claim, much less a series of separate and discrete tort claims.

Shavers next asserts a claim of negligence. John Roberts denies that it breached any duty arising from the relationship of buyer and seller. John Roberts points out that it could not have owed a duty because at the time of the sale it delivered JESCO Louisiana an invoice that stated: "Sold AS IS WHERE IS, No Warranty Expressed or Implied." Shavers says that he does not recall seeing this invoice, **but he attached it to the complaint that he and JESCO Louisiana filed in this court**. Shavers also argues that John Roberts represented that the dozers would last a

9

year in operation. However, he does not submit any written evidence to support this assertion. What about the statute of frauds? In any event, such a puffing representation, if made, cannot constitute fraud under the law of Alabama or the law of Mississippi.

Shavers also says that John Roberts had a duty to disclose the defects in the bulldozers. A duty to disclose defects in used vehicles arises only if the seller has knowledge of specific defects that affect health or safety and the defect is not known to or readily observable by the buyer. *See Hughes v. Hertz Corp.*, 670 So.2d 882, 888 (Ala. 1995). Shavers has not presented any evidence to show that John Roberts, or any of its agents, knew of any defects as thus defined. The mere fact that equipment is "used" is not a "defect." Shavers even testified that it was his opinion that John Roberts thought the machines were in better condition than they were. Because Shavers has failed to offer any evidence to raise a genuine dispute of material fact on this issue, John Roberts is entitled to summary judgment on this claim.

John Roberts points out that it could not have breached any warranties to Shavers because it gave to JESCO Louisiana and Shavers an invoice disclaiming any warranties.

Section 7-2-316(3)(a), Ala.Code (1975) provides:

Unless the circumstances indicate otherwise, al implied warranties are excluded by expressions like "as is,"

10

> "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

The language in the invoice is clear in calling Shavers' attention to the exclusion of warranties. Although Shavers says that he does not recall seeing the invoice, he must have received it because he attached it to his complaint.

Section 7-2-315, Ala.Code (1975) provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skills or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty tat the goods shall be fit for such purpose.

Shavers admittedly did not rely on John Roberts for the actual selection of the dozers. Shavers testified that he has been in the construction business for over 30 years, that he is experienced in looking at dozers and in determining what type he needs for a particular job, and that he generally is the person who purchases all heavy equipment for his construction companies. Because Shavers has not produced any evidence to suggest that he relied on John Roberts' expertise he cannot claim that John Roberts breached any implied warranty regarding the dozers' fitness for a particular purpose. John Roberts is clearly entitled judgment as a matter of law on this claim.

Shavers next argues that John Roberts violated the Deceptive Trade Practice Act by selling the dozers in a damaged condition.

John Roberts easily defeats this claim by interposing § 8-9-13, Ala. Code (1975), which provides a complete defense to persons who did not knowingly violate the Act. Shavers testified that it was his opinion that "John Roberts thought the machines were in better condition than they were. I think he, whoever he bought them from, socked it to him." Shavers does not offer any evidence to contradict his own testimony and to suggest that John Roberts knowingly violated any provisions of the Deceptive Trade Practices Act. John Roberts is entitled to summary judgment on this issue.

Shavers continues with his kitchen sink offense by contending that John Roberts committed fraud because at the time of the sale of the dozers John Roberts was not the owner of the dozers in that FNB, John Roberts' bank, held a security interest in the property and was the true owner. To recover for fraud, Shavers must prove: (1) a false representation by defendant, (2) of a material fact; (3) justifiable reliance by the plaintiff; and (4) damages as a proximate result. *See Hinkle v. Cargill*, 613 So.2d 1216, 1220 (Ala. 1992). John Roberts says that it did not make any false representations to Shavers, nor did Shavers suffer any damages. At the time of the sale FNB did hold a security interest in the dozers. But prior to the sale to Shavers, John Roberts notified FNB of the terms and conditions of the sale, and it was agreed that the UCC-1s would be terminated. Although FNB

failed immediately to terminate the UCC-1s, FNB did terminate the UCC-1s when notified of the problem on August 30, 2001. Shavers did not suffer any damage as a result of the technical, temporary absence of full title. FNB never took any action against John Roberts, Shavers or JESCO Louisiana. There was absolutely no interference with the possession and use of the equipment by the buyers. Shavers and his companies had full use of the dozers until damaged and until this court granted John Roberts' motion for writ of seizure. *De minimus non curat lex*.

In his deposition, Shavers stated that the only damages he is claiming are damages for loss of rental value of the machines due to the down time associated with each machine and punitive damages for the wrongful repossession. This court could not allow punitive damages for a repossession that it ordered, and John Roberts was not responsible for the flood.

**Motion For Summary Judgment of John Roberts as Counterclaimant**

John Roberts started this litigation by filing its replevin action in Mississippi. Its claim has been redefined in this court as a counterclaim against Shavers and JESCO Louisiana for failure to pay the promissory note, fraud, and detinue. John Roberts has not addressed its claims for fraud and detinue in its brief. Therefore, these claims are deemed abandoned. The court has earlier granted John Roberts' motion to repossess the dozers, upon its posting a replevy bond. John Roberts now moves for

13

summary judgment on its remaining claim for breach of contract.

John Roberts must prove: 1) the existence of a contract binding upon the parties to the action, 2) its own performance under the contract, 3) defendant's nonperformance, and 4) damages. Shavers and JESCO Louisiana admittedly executed a promissory note and security agreement in favor of John Roberts on October 28, 2000 and November 16, 2000, respectively. The note states: "For value received, we, JESCO Construction Corp., . . . .herein referenced to as the undersigned, jointly and severally promise to pay to the order of John Roberts . . . [t]he sum of Two Hundred Sixty-Thousand Dollars ($260,000.00). . ." See the copy of the promissory note attached as an appendix. The note was signed by Shavers twice; he signed it in his individual capacity and on behalf of JESCO Louisiana (conspicuously without mentioning "Louisiana"). Shavers does not deny his signature. Shavers argues that the note does not have the requisite elements of a valid promissory note under the Alabama Commercial Code. However, the signatories on the note fail to raise a genuine issue of material fact on the validity of the transaction. Mere assertions do not constitute facts.

Shavers and JESCO Louisiana also attempt to defend the counterclaim by contending that the transaction between JESCO Louisiana and John Roberts created a lease with an option to purchase rather than a sale and promise to pay secured by the

14

purchased equipment. Neither the note nor the security agreement includes any hint of a lease or lease/purchase agreement. When questioned on this issue in his deposition Shavers stated that the "documents speak for themselves." The affidavit of Karen Rexroad ("Rexroad") submitted by Shavers also supports John Roberts' position that the transaction was an absolute sale. In her affidavit, Rexroad states that 1) she went with Shavers to **"purchase"** the two D9 dozers, and 2) that she wrote the check for the **"purchase"** of the two dozers as a down payment on the total **"purchase"** price. The payment of $ 83,000 "up front" hardly sounds like a lease, particularly without any use of the word "lease." This is pure wishful thinking.

  Shavers next argues that the transaction consisting of the invoice, promissory note, and security agreement fails for lack of consideration. This contention is so weak that the phrase "grasping at straws" comes to mind. The court apologizes for its continued use of hackneyed expressions, but they are so appropriate in this case that they are irresistible.

  Shaves claims that the security agreement is null and void because of the undisclosed security interest of FNB. This is the same argument discussed earlier, dressed up in slightly different clothes.  Shavers offers no evidence or legal argument to support his position that FNB's residual security interest voided John Roberts' security interest. Furthermore, John Roberts has offered

15

uncontroverted evidence that FNB agreed to release its interest, and FNB in fact terminated it before the writ of seizure was issued by this court. Would Shavers and JESCO Louisiana have been better off if they did not get credit towards the value of the note for the fair market value of the dozers at the time of the repossession? This would be the effect of this court's agreeing with the argument of the counterclaim defendants. Elongating this spurious argument, Shavers argues that FNB's interest precluded the sale under Alabama Commercial Code. Shavers does not point to any statute or decision to support this hopeful assertion.

As payment for the dozers, the undisputed evidence shows that Shavers and JESCO Louisiana separately and severally agreed to pay John Roberts the sum of $260,000.00 A principal balance of $177,000.00 remains outstanding, before deducting the value of the repossessed equipment. Shavers admitted in his deposition that neither he nor JESCO Louisiana paid anything after the initial $83,000.00.

John Roberts claims to have incurred the following damages: 1) one dozer was irreparably damaged as a result of sinking into sand and water in the Mississippi Sound, 2) the other dozer sustained damage because of its continued use in the beach sand, plus ordinary wear and tear, 3)lost profits as a result of the damage to the two dozers, 4)the cost of attorneys to recover the dozers and to collect the debt, and 5)the balance owed on the

promissory note and security agreement, plus interest. There is no basis in law or fact for damages mentioned by John Roberts except for the debt itself, plus interest and attorney fees. To use another hackneyed phrase, John Roberts cannot have its cake and eat it too.

Because John Roberts has not provided any evidentiary basis for quantifying John Roberts' damages and entering a final money judgment in its favor, the jury demand filed by Shavers and JESCO Louisiana will require a jury trial on the question of John Roberts damages.

### Conclusion

For the reasons stated, John Roberts' two motions for summary judgment will be granted except for the fixing of damages, and plaintiffs' and counterclaim defendants' motion to suppress the deposition of Shavers will be denied.

DONE this _17_ day of September, 2002.

_____
WILLIAM M. ACKER
UNITED STATES DISTRICT JUDGE

**APPENDIX**

**JOHN ROBERTS MACHINERY CO., INC.**
P.O. BOX 3418
JASPER, ALABAMA 35502-3418
205-221-2253

New & Used Construction and Mining Equipment

# Promissory Note

October 28, 2000

For value received, we, JESCO Construction Corp., of 15312 Dedeaux Road, Gulfport, MS; herein referenced to as the undersigned, jointly and severally promise to pay to the order of John Roberts Machinery Co., Inc. of P.O. 3418, Jasper, AL. The sum of Two Hundred Sixty Thousand Dollars ($ 260,000.00) US, and having paid Eighty-six Thousand Six Hundred Sixty-six Dollars and Sixty-seven Cents ($ 86,666.67) at inception. The balance of One Hundred Seventy-three Thousand Three Hundred Thirty-three Dollars and Thirty-four Cents ($ 173,333.34) is payable in two (2) equal successive monthly installments of Eighty-six Thousand Six Hundred Sixty-six dollars ($ 86,666.67) in lawful money of the United States of America. First installment being due and payable on November 28th, 2000 and the final balance installment due and payable on December 28th, 2000 If any installment is not paid when due the undersigned shall pay collection charges of 5% of amount due or the actual cost of collection, which ever is greater. In addition, the entire amount owing and unpaid hereunder shall at the election of holder become due and payable. Notice of such election to undersigned is hereby waived.

The undersigned shall pay all reasonable attorney's fees incurred by the holder in enforcing any right or remedy hereunder.

The undersigned authorizes the holder to date and complete this note in accordance with the terms of the loan evidenced hereby.

All obligations of the undersigned hereunder shall be joint and several.

Signed _____
JESCO Construction Corporation
John E. Shavers, President

Signed _____
John Roberts Machinery Co., Inc.
John E. Roberts, President

Signed _____
John E. Shavers